451 A.2d 477

**DERRICKHEIM COMPANY, a Pennsylvania Corporation,**

v.

**Richard L. BROWN and Mary E. Brown, his wife and Arthur J. Sumoske, Jr. and Karen L. Sumoske, his wife, Appellants.**

**Richard L. BROWN, Mary E. Brown, Arthur J. Sumoske, Jr. and Karen L. Sumoske, Appellants,**

v.

**Frank F. WEBER a/k/a Frank Weber and any and all of his Unknown Heirs, Devisees, Representatives and Assigns and The Derrickheim Company.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1980.

Filed Oct. 1, 1982.

Petition for Allowance of Appeal Denied Feb. 25, 1983.

John A. Burkhiser, Oil City, for appellants.

John A. Metz, Jr., Pittsburgh for Derrickheim, appellee (at No. 70) and Weber, appellees (at No. 71).

Before CAVANAUGH, WATKINS and HOFFMAN, JJ.

CAVANAUGH, Judge:

This appeal was taken from orders entered following a non-jury trial on two consolidated actions to quiet title involving a 120 acre tract of land in Venango County, Pennsylvania. For the reasons discussed below, we reverse the orders of the lower court.

Briefly stated, the facts are as follows. Prior to December, 1942, the property in question was owned by Frank Weber. In December, 1942, the Treasurer of Venango County sold the property to the Commonwealth of Pennsylvania for non-payment of taxes. Notice of the sale, however, was not given to Frank Weber as required by law. In September, 1946, the Commonwealth conveyed the property to George and Martha Holliday. In June, 1953, Richard and Mary Brown, appellants herein, entered into an agreement of sale to purchase the property from the Hollidays. The agreement stipulated that a deed would not be executed until the full purchase price was paid. On July 26, 1969, the Browns, as equitable owners of the property, leased the oil and gas rights in the property to Derrickheim Company, appellee herein. The lease was to extend "for a term of four (4) years . . . and as much longer as oil and gas is produced in paying quantities." The Browns were to receive as royalties one-eighth of all oil produced from the land, delivered free of expense into tanks or pipelines to the Browns' credit. The lease agreement also gave Derrickheim an option to purchase the property for $6,000 anytime during the primary lease term of four years.

Derrickheim commenced drilling operations on the premises but in September, 1969, shortly before completion of the drilling process, it learned of the defect in the tax sale. The drilling process was completed on September 25, 1969, but,

due to the uncertain state of the title, Derrickheim at that point ceased operations at the site and capped the well. Derrickheim requested that the Browns bring an action to quiet title against the heirs of Frank Weber but the Browns failed to do so. Between September of 1969 and the filing of the instant suit in June, 1978, Derrickheim continued to mow the area around the well site but it never began active operation of the well.

In September, 1973, following the expiration of the primary lease term of four years, the Browns notified Derrickheim that the lease had expired or, in the alternative, had been forfeited. Derrickheim responded by denying that the lease had terminated and asserting that it was still a valid agreement. Neither party took any further action on the matter for over four years. In June, 1977, the Browns finally obtained legal title to the property from the estate of George Holliday. In October, 1977, Arthur and Karen Sumoske entered into an agreement of sale with the Browns to purchase the property. It was this event which precipitated the filing of the instant actions.

Derrickheim filed the first complaint in June, 1978, seeking a determination of the validity of the oil and gas lease entered into between Derrickheim and the Browns in July, 1969. The Browns and the Sumoskes filed a second action seeking to terminate whatever interest the heirs of Frank Weber might have had in the property due to the lack of notice of the tax sale, and also seeking to have the oil and gas lease declared terminated.

With regard to the interest of the heirs of Frank Weber, the lower court entered an order on June 15, 1979, directing the heirs of Frank Weber to file an action of ejectment within thirty days or forever be barred from asserting any right or interest in the land. No such action was filed and the court therefore stated in its final order that the heirs of Frank Weber were forever barred from asserting any right, title or interest in the land. No one has appealed from that portion of the order and therefore we will not address it.

With regard to the lease, the lower court found that the oil and gas lease was still a valid instrument and it stipulated in the order that the terms of the lease would take effect on the date of the order. The Browns and Sumoskes were barred from asserting any right, title or interest in the land which was inconsistent with the interest of Derrickheim under the terms of the lease. The Browns and Sumoskes have appealed from this determination.

In ruling as it did, the lower court agreed with Derrickheim's contention that upon learning of the cloud on the title, it was "prudent and proper" for Derrickheim to suspend operations until the cloud was removed. The court concluded that since Derrickheim was justified in waiting until the cloud was removed before proceeding with further operation of the well, the running of the lease term was suspended until such time as the cloud was removed. The court further found that Derrickheim could not have exercised the option to purchase outright until the cloud was removed and it therefore ordered that the option to purchase remain with the lease, which was reinstated effective on the date of the order.

Under normal landlord and tenant law, a lessor's covenants of title and quiet enjoyment are not breached by the mere existence of a cloud on title. The breach does not occur until and unless the lessee is evicted by a holder of paramount title. *See* Restatement Second, Property, section 4.3 (1977); *Strong v. Nesbitt,* 267 Pa. 294, 110 A. 250 (1920). However, oil and gas leases are not controlled by normal landlord and tenant law. *See* Kuntz, A Treatise on The Law of Oil and Gas, section 52.1 (1978). Under the circumstances presented in this case, we agree with the trial court's conclusion that the cloud on the title relieved Derrickheim of any affirmative duty it may have had under the lease to drill for oil or make rental payments.[1] However, we cannot agree that the cloud on the title stopped the running of the lease

1. The lease specified that it would become null and void unless a well was completed within one year or unless Derrickheim paid rent of one dollar per acre per year until the well was completed.

term. The lease specifically stated that it would run for a term of four years "and as much longer as oil and gas is produced in paying quantities." Since oil and gas was not being produced in paying quantities, the lease did not continue to run past the primary term of four years. The fact that it was "prudent" for Derrickheim to suspend operations upon learning of the cloud on the title does not justify disregarding the express language of the lease. The Pennsylvania Supreme Court has held in cases involving oil and gas leases containing lease terms of a period of years and "as much longer as oil and gas is produced" or similar language, that when oil and gas is no longer being produced, the lessee becomes a tenant at will and the tenancy can be terminated by either party upon notice being given. *White v. Young*, 409 Pa. 562, 186 A.2d 919 (1963); *Clark v. Wright*, 311 Pa. 69, 166 A. 775 (1933); *Cassell v. Crothers*, 193 Pa. 359, 44 A. 446 (1899). Derrickheim's tenancy in the instant case therefore terminated upon Derrickheim's receipt of notice from the Browns that they considered the lease terminated.

■ Furthermore, we believe that the option to purchase also expired at the end of the primary term of four years. The lease specifically stated that the option to purchase could be exercised "at any time within the original term of this lease, being four (4) years from the date of execution and acknowledgment thereof.". We agree with the lower court's statement that a purchaser of an interest in real estate is not required to accept doubtful title. The Browns, however, were under no obligation to produce clear title *until* Derrickheim exercised its option to purchase in one of the ways specified in the lease.[2] *McBride's Estate*, 267 Pa. 250, 110 A. 149 (1920). Since Derrickheim never attempted to exercise its option to purchase, the Browns' duty to

---

**2.** Under the terms of the lease, Derrickheim could exercise the option to purchase by personal notice or certified mail at the Browns' last known address or by paying the agreed purchase price into the Court of Common Pleas of Venango County for the sole use and benefit of the Browns.

convey clear title never arose. The option was not exercised during the term of the lease and it has therefore expired.

For the foregoing reasons, we reverse the orders of the lower court insofar as they direct judgment to be entered in favor of Derrickheim Company and against the Browns and Sumoskes. Judgment shall be entered in both actions in favor of the Browns and Sumoskes and against Derrickheim Company.