Curtis R. **LAUCHLE,** et al., Plaintiffs

v.

The **KEETON GROUP LLC,**
et al., Defendants.

Gary K. Beach, et al., Plaintiffs

v.

**MK Resource Partners II, L.P.,**
et al., Defendants

**Andrew Hooker, Plaintiff**

v.

The **Keeton Group LLC,**
et al., Defendants.

Nos. 4:08–CV–1868, 4:08–CV–1950, 4:08–CV–2091.

United States District Court,
M.D. Pennsylvania.

March 8, 2011.

---

758

Kenneth S. Kornacki, Steven Petrikis, Brian T. Must, Metz Lewis LLC, Pittsburgh, PA, for Plaintiffs, Defendants.

David R. Fine, George A. Bibikos, Amy L. Groff, David R. Fine, K & L Gates LLP, Harrisburg, PA, Kevin C. Abbott, Nicolle R. Snyder Bagnell, Reed Smith LLP, Pittsburgh, PA, for Defendants.

## MEMORANDUM

JOHN E. JONES III, District Judge.

Pending before the Court are the parties' cross-Motions for Summary Judgment with Respect to the Chief Defendants' Counterclaims, filed in November 2010. The Chief Defendants [1] move the Court to

---

**1.** The Chief Defendants include the following: In *Lauchle:* Chief Oil & Gas LLC; Radler 2000 LP; MK Resource Partners II, LP; eCorp Resource Partners I, LP; Craig Ian Burton, as Trustee of the CI Burton Family Trust; XYR Oil & Gas, LLC; Denpeer Energy, LP; Giana Resources, LLC; Beach Petroleum, LLC; Edward E. Robbs; Seaspin Pty Ltd., as Trustee of the Aphrodite Trust; Source Oil & Gas, LLC; Schnerk Revocable Trust; Robert Quillin and Rock Creek Ranch I, Ltd. In *Beach:* Chief Oil & Gas LLC; Radler 2000 LP; MK Resources Partners II, LP, eCorp Resource Partners I, LP; Craig Ian Burton, as Trustee of the CI Burton Family Trust; XYR Oil & Gas, LLC; Denpeer Energy, LP; Giana Resources, LLC; Beach Petro-

leum, LLC; Edward E. Robbs; Seaspin Pty Ltd., as Trustee of the Aphrodite Trust; Source Oil and Gas, LLC; Schnerk Revocable Trust; Robert Quillin; Rock Creek Ranch I, Ltd.; Robbs Family Trust; Brazos Royalty LLC; and Plybon Family Trust. In *Hooker:* Chief Oil & Gas LLC; Radler 2000 LP; MK Resource Partners II, LP; eCorp Resource Partners I, LP; Craig Ian Burton, as Trustee of the CI Burton Family Trust; XYR Oil & Gas, LLC; Denpeer Energy, LP; Giana Resources, LLC; Beach Petroleum, LLC; Edward E. Robbs; Seaspin Pty Ltd., as Trustee of the Aphrodite Trust; Source Oil & Gas, LLC; Schnerk Revocable Trust; Robert Quillin and Rock Creek Ranch I, Ltd.

grant judgment in their favor and equitably extend the terms of the Plaintiffs' oil-and-gas leases with the Chief Defendants. Essentially, the Chief Defendants argue that Plaintiffs repudiated their leases when they filed the instant declaratory judgment actions to determine whether their leases were valid under Pennsylvania's Guaranteed Minimum Royalty Act ("GMRA"), 58 P.S. § 33. On October 6, 2010 we issued a Memorandum and Order granting the Defendants' motions to dismiss and upholding the leases as valid under the GMRA. In doing so, we explicitly relied upon the Pennsylvania Supreme Court's rationale in *Kilmer v. Elexco Land Services, Inc.*, 605 Pa. 413, 990 A.2d 1147, 1158 (2010). The Chief Defendants now request that we equitably extend the leases to account for the period of time during which the Plaintiffs contested the leases in this Court. For the reasons that follow, the Plaintiffs' Motions for Summary Judgment shall be granted and the Chief Defendants' Motions for Summary Judgment shall be denied.

## I. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e)(2). An issue is "genuine" only if

there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir.2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir.1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir.2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505.

## II. FACTS AND BACKGROUND

The material facts in these matters are not in dispute and are summarized as fol-

lows. Plaintiffs are landowners who entered into substantially identical oil-and-gas leases with the Keeton Group.[2] Each lease had a primary term of five years. In each lease, if the lessees were producing oil or gas in paying quantities at the end of the five-year lease term, the lease would automatically be extended for as long as such production continued.

In the late fall of 2008, all three of the above-captioned actions were commenced. As noted above, the Plaintiffs sought a declaration as to whether the leases were valid under the GMRA. In reaction to the litigation, the Chief Defendants ceased any development of drilling on the Plaintiffs' land and filed motions to dismiss. Following oral argument on the motions to dismiss, on June 19, 2010, we stayed these actions pending the Pennsylvania Supreme Court's decision in *Kilmer.* On March 24, 2010, the Pennsylvania Supreme Court issued its opinion in *Kilmer.* The Court accepted supplemental briefing by the parties and thereafter, by Memorandum and Order dated October 6, 2010, we granted the Chief Defendants' motions to dismiss.

Following the *Kilmer* decision, but before our October 6, 2010 ruling, the Chief Defendants filed a Counterclaim against the Plaintiffs. Plaintiffs immediately moved to dismiss the Counterclaim based on their assertion that the leases were invalid under the GMRA. In a companion Order dated October 6, 2010, we denied the Plaintiffs' motions inasmuch as we had found the leases valid under the GMRA in our Memorandum and Order of the same date. Thereafter, the parties filed the instant cross-Motions for Summary Judgment. The Motions have been fully briefed by the parties and are therefore ripe for our review.

**2.** In each case, the working interests of the Plaintiffs' oil-and-gas leases were assigned to

## III. DISCUSSION

The issue presented to the Court by the Chief Defendants and argued within the instant Motions is one of first impression. In essence, the Chief Defendants invite the Court to hold that a lawsuit to invalidate an oil-and-gas lease constitutes a repudiation of the lease, and that the proper remedy is an equitable extension of the lease term by the length of time the lawsuit was pending.

In support of their claim, the Chief Defendants argue that the declaratory judgment actions initiated by Plaintiffs forced them to forego operations on the subject properties due to uncertainty about the validity of the leases, and as such they were deprived of benefits of each lease's full term. Plaintiffs counter that they did not repudiate the leases by filing these actions, nor did they prevent the Chief Defendants from conducting drilling operations on the land during the pendency of these actions. Plaintiffs further argue that it would be inequitable to require them to extend the leases merely because the Chief Defendants decided to voluntarily forego operations in the face of litigation over leases that the Chief Defendants themselves drafted.

Plaintiffs cite *Derrickheim Company v. Brown,* 305 Pa.Super. 173, 451 A.2d 477 (Pa.Super.Ct.1982) in support of their position that we should not equitably extend the leases. In *Derrickheim,* shortly after lessee and lessors had entered into a four year oil-and-gas lease, the lessee discovered a cloud on lessors' title to the land. Lessee stopped drilling for oil on the land and waited for a judicial resolution of the title issue. Once resolved, the lower court

the Chief Defendants.

extended the term of the lease from the date of the title issue resolution, finding that it was "prudent and proper" for the lessee to suspend operations until the cloud was removed. The Superior Court thereafter reversed, noting that "oil and gas leases are not controlled by normal landlord and tenant law," and that "[u]nder the circumstances ... [while] we agree with the trial court's conclusion that the cloud on the title relieved [lessee] of any affirmative duty it may have had under the lease to drill for oil or make rental payments ... we cannot agree that the cloud on the title stopped the running of the lease term." *Id.* at 177–178, 451 A.2d 477. In reaching this conclusion, the Superior Court reasoned that:

> "The lease specifically stated that it would run for a term of four years 'and as much longer as oil and gas is produced in paying quantities.' Since oil and gas was not being produced in paying quantities, the lease did not continue to run past the primary term of four years. The fact that it was "prudent" for [lessee] to suspend operations upon learning of the cloud on the title does not justify disregarding the express language of the lease. The Pennsylvania Supreme Court has held in cases involving oil and gas lease terms of a period of years and 'as much longer as oil and gas is produced' or similar language, that when oil and gas is no longer being produced, the lessee becomes a tenant at will and the tenancy can be terminated by either party upon notice being given."

*Id.* at 178, 451 A.2d 477 (citing *White v. Young,* 409 Pa. 562, 186 A.2d 919 (1963); *Clark v. Wright,* 311 Pa. 69, 166 A. 775 (1933); *Cassell v. Crothers,* 193 Pa. 359, 44 A. 446 (1899)).

Chief Defendants argue that *Derrickheim* is distinguishable because here, unlike in *Derrickheim,* the *lessors* initiated legal action to test the validity of the subject lease, not the *lessee(s).* Chief Defendants posit that Plaintiffs' actions in the matter *sub judice* are tantamount to repudiation of the lease, warranting equitable extension thereof. Chief Defendants rely on the jurisprudence of other states, namely Louisiana, Oklahoma, and Texas, to support their position that Plaintiffs repudiated the leases by filing the instant actions. *See, e.g., Rougon v. Chevron, USA, Inc.,* 575 F.Supp. 95 (M.D.La.1983)(Louisiana law); *Barby v. Cabot Petroleum Corp.,* 944 F.2d 798, 799–800 (10th Cir.1991)(Oklahoma law); *Cheyenne Resources, Inc. v. Criswell,* 714 S.W.2d 103, 105 (Tex.Ct.App.1986)(Texas law).

■ As the parties and this Court are well aware, the discovery of the Marcellus Shale has revealed gaps in Pennsylvania's jurisprudence on the various legal issues that arise from natural gas drilling projects.[3] Previously, the Court was fortunate enough to have the Pennsylvania Supreme Court's guidance in *Kilmer* before determining the validity of the subject leases under the GMRA. However, because the issue *sub judice* has not yet been considered by the Pennsylvania Supreme Court, our task is predict how the that court would rule on it. *See U.S. Underwriters Ins. Co. v. Liberty Mutual Ins. Co.,* 80 F.3d 90, 93 (3d Cir.1996). While undertaking this task, "[t]he rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indica-

---

**3.** *See Fiorentino v. Cabot Oil & Gas Corp.,* 750 F.Supp.2d 506, 2010 WL 4595524, 2010 U.S. Dist. LEXIS 120566 (M.D.Pa. Nov. 15, 2010)(declining to extend non-applicability of strict liability to storage and transmission of gas and petroleum products in gas drilling, while noting that the Pennsylvania courts have yet to consider the same issue).

tion that the highest state court would rule otherwise." *Id.* (citations omitted); *see also City of Philadelphia v. Lead Indus. Assoc., Inc.,* 994 F.2d 112, 113 (3d Cir. 1993).

With this in mind we must turn to the Superior Court's decision in *Derrickheim.* We find it extremely persuasive that the *Derrickheim* Court declined to equitably extend an oil and gas lease term after the conclusion of litigation that impacted the lease. Chief Defendants would not have us apply this rationale to the matter at hand because here the *lessors* commenced the litigation, and in *Derrickheim,* the *lessee* commenced the suit. We think this distinction puts too fine a point on the matter by placing undue emphasis on the party initiating the legal action. Establishing a party-driven, bright line rule as Chief Defendants suggest would discourage lessors from bringing actions to determine the validity of their leases, since they would risk a finding that they had thus repudiated those agreements even in the event the underlying actions proved unsuccessful. Nor do we think the Pennsylvania Supreme Court would issue such a holding. In making this determination we are mindful of the fact that oil companies, like the Chief Defendants, wield significant, if not exclusive, power in the drafting of oil and gas leases. A determination that Plaintiffs had repudiated their leases via the filing of these actions further tips the balance in favor of the oil companies. Moreover, it would likely dissuade lessors from bringing potentially meritorious actions, which the case *sub judice* unquestionably was at its inception, in the future.[4] Accordingly, deeming these leases to have been repudiated under the circumstances of this case is both bad law and even worse public policy, and we decline to accept Chief Defendants' invitation to so penalize Plaintiffs.

## IV. CONCLUSION

Having thus determined that the Plaintiffs did not repudiate their leases when they filed the instant actions, we shall decline to equitably extend the lease terms to account for the period of time that these actions were pending. Accordingly, summary judgment shall be granted in favor of the Plaintiffs on the Defendants' counterclaims, and these matters shall be closed. An appropriate Order shall issue in each case.

---

4. As a reminder to the parties and the reader, whether leases of this type were valid under the GMRA was a question of such significance that the Pennsylvania Supreme Court exercised extraordinary jurisdiction to decide the issue.