J. A12042/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.B. SUSAN BARTON, BRENT L. BARTON, AND TRACEE R. BARTON | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| RONALD L. GRAHAM AND MICHAEL D. GRAHAM, | : : | No. 1704 WDA 2018 |
| Appellants | : : | |

Appeal from the Order Entered November 2, 2018,
in the Court of Common Pleas of Armstrong County
Civil Division at No. 2017-00796

BEFORE:  BENDER, P.J.E., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 26, 2020**

Ronald L. Graham and Michael D. Graham (collectively, "the Grahams") appeal from the November 2, 2018 order entered by the Court of Common Pleas of Armstrong County granting the motion for summary judgment filed by E.B. Susan Barton, Brent L. Barton, and Tracee R. Barton (collectively, "the Bartons").[1]  After careful review, we affirm.

The trial court set forth the following factual history:

> The Bartons are the successor lessors to an
> "Oil Lease" executed between their predecessors,

---

[1] The trial court notes that E.B. Susan Barton "was the sole owner of the Property at the time the complaint was filed.  Since that filing, she has conveyed the Property to [] Brent L. and Tracee R. Barton."  (Trial court memorandum, 11/2/18 at 1 n.1.)  The trial court defines "the Property" as "approximately 100 acres situate[d] in Sugarcreek Township, Armstrong County, Pennsylvania."  (*Id.* at 1.)

Robert F. Mellish and Grace A. Mellish, and Edward B. Boyle and Company on September 30, 1964 (the "Lease"). Despite being executed in 1964, the Lease was not recorded with the Armstrong County Recorder of Deeds until February 7, 2011. By virtue of certain assignments, the Grahams are the current successor lessees of seven-eighths (7/8) interest in the Lease.[Footnote 2] The Lease provides for a primary term of fifteen (15) years, "and so long thereafter as oil or gas can be produced in paying quantities." The Lease goes on to provide that "[i]t is agreed, [t]hat if gas is found in paying quantities, the consideration in full to the party of the first part for each gas well shall be one-eighth (1/8th) royalty per annum for the gas from each gas well when utilized off the aforesaid premises." After the typewritten insertion of a "one-eighth (1/8th[])" royalty, the fixed amount payment designation of "DOLLARS" is crossed out. Typewritten at the end of the first page of the Lease is a rental provision providing that "[t]he party of the second party [sic] agrees to pay a rental of [f]ifty four ($54.00) dollars yearly until drilling operations are begun" (the "Delay Rental").

> [Footnote 2] A third owner of the working oil and gas interests underlying the Property, Anna Marie Knoll, executed a release of lease in May 2017, relinquishing her one-eighth (1/8) interest. Although the Grahams appear to contest the Bartons' determination of the ownership of the working interests in the oil and gas underlying the Property, those determinations [were] not material to the [trial court's] disposition of the instant motion for summary judgment; nor have the Grahams[] presented to the [trial court] any suggested additional or alternative owners of these interests.

A single gas well has been drilled pursuant to the Lease, presumably during the time when the Mellishes owned the Property (the "Mellish Well"). The Mellish Well at one time produced gas, but has not

produced any gas since June 1993. It currently is disconnected from any tanks or commercial distribution systems for the sale of gas, and is overgrown and surrounded by trees, brush, and saplings. The Grahams have not paid to the Bartons any royalty payments, but instead have tendered rental payments of $54.00 per year for the past several years. The Bartons have rejected these payments and have not cashed any of the checks.

In February 2017, counsel for the Bartons sent letters by certified mail to both Grahams advising them that the Lease had expired 1) because of the lack of production, and 2) because the Bartons, specifically their predecessor the Barton Equity Partnership, had purchased the Property in good faith and for value in 1999. Because the Lease was not recorded until 2011, the Bartons advised that the Partnership was a bona fide purchaser for value without record notice of the Lease which, therefore, cannot encumber the Property. The Bartons requested that the Grahams execute releases of their interest in the Lease, but [the Grahams] have refused to do so.

The Bartons filed a complaint in ejectment on May 31, 2017, in which they include counts for ejectment and "good faith purchaser for value." They [sought] declarations by [the trial court] that the Lease has expired and that the Grahams have no remaining interest in the oil and gas underlying the Property.

Trial court memorandum, 11/2/18 at 2-4.

The Bartons filed a motion for summary judgment on June 15, 2018. After hearing argument, the trial court entered an order granting the Bartons' motion for summary judgment on November 2, 2018. On November 13, 2018, the Grahams filed a motion for reconsideration. The trial court denied the Grahams' motion on November 27, 2018.

The Grahams filed a timely notice of appeal to this court on November 30, 2018. The trial court ordered the Grahams to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the Grahams timely complied. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on January 4, 2019.

Preliminarily, we note that the Pennsylvania Rules of Appellate Procedure include requirements for the content of briefs filed with this court. ***See generally*** Pa.R.A.P. 2111(a). Here, the Grahams' brief fails to include a statement of jurisdiction, a summary of the argument, a copy of the trial court's Rule 1925(a) opinion, and a copy of the Grahams' Rule 1925(b) statement of errors complained of on appeal. ***See*** Pa.R.A.P. 2111(a)(1), (6), (b), and (d). Additionally, the structure of the Grahams' brief is not in compliance with Rule 2111(a). Further, the Grahams failed to divide the argument section of their brief into as many parts as there are questions to be answered, pursuant to Pa.R.A.P. 2119(a).

We have the authority to dismiss appeals for failing to comply with the Rules of Appellate Procedure and will do so in cases where such a failure hinders our ability to conduct meaningful appellate review. ***Kern v. Kern***, 892 A.2d 1, 5-6 (Pa.Super. 2005) (citation omitted), ***appeal denied***, 903 A.2d 1234 (Pa. 2006); ***see also PHH Mortg. Corp. v. Powell***, 100 A.3d 611, 615 (Pa.Super. 2014), citing Pa.R.A.P. 2101 (requiring that briefs conform with all material aspects of the relevant Rules of Appellate Procedure and

granting appellate courts the power to quash or dismiss appeals in cases where defects in the brief are substantial). Here, because our ability to conduct meaningful appellate review has not been hindered despite the Grahams' multiple violations of the Rules of Appellate Procedure, we shall reach a decision on the merits.

The Grahams allege the following trial court errors:

> The trial court has erred in granting summary judgment to [the Bartons]. In doing so, the trial court has erred in both fact-finding and application of the laws of the Commonwealth of Pennsylvania. First, the trial court erred in granting summary judgment while material and relevant discovery was still pending. Second, the trial court erred in finding that no genuine issue of material fact existed in this matter.
>
> The trial court further erred in finding that the lease at issue was a royalty-based lease, and not a rental-based lease or hybrid lease. In doing so, the trial court erred in finding that the lease was terminated or was subject to termination. Additionally, the [trial] court abused its discretion and/or misapplied the law in applying its standard of review and in its review of the facts in determining summary judgment.

Grahams' brief at 6-7.

Based on our review of the Grahams' brief, we summarize the Grahams' complaints as follows:

I.   Whether the trial court improperly assigned the burden of

     proof to the Grahams?

II.   Whether the trial court erred in granting summary judgment while discovery was still ongoing and when a genuine issue of material fact existed?

III.  Whether the trial court committed an error of law because an oil and gas lease term can be extended when the lessee exercised good faith in attempting to extract and produce natural gas from a well?[2]

When reviewing an order granting or denying a motion for summary judgment, we are governed by the following standard of review:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where is no genuine issue of material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only

---

[2] The table of contents in the Grahams' brief contains the following point headings:

- [·] The [trial] court erred in granting summary judgment during ongoing discovery.
- [·] A genuine issue of material fact exists.
- [·] The lease has not terminated by operation of law.
- [·] An oil and natural gas lease does not expire and is not forfeited.
- [·] The trial court improperly relied upon the **Hite** case.
- [·] The trial court misapplied the standard of review.

Grahams' brief at ii (full capitalization omitted).

> where it is established that the court committed an error of law or abused its discretion.

**_Daley v. A.W. Chesterton, Inc._**, 37 A.3d 1175, 1179 (Pa. 2012), quoting

**_Pappas v. Asbel_**, 768 A.2d 1089, 1095 (Pa. 2001) (citations omitted).

## I.

First, the Grahams aver that the trial court, in granting the Bartons' motion for summary judgment, improperly placed the burden of proof on the Grahams. (Grahams' brief at 26-28.) Specifically, the Grahams argue that the trial court misapplied our supreme court's holding in **_Ertel v. Patriot-News Co._**, 674 A.2d 1038 (Pa. 1996), **_cert. denied_**, 519 U.S. 1008 (1996). (Grahams' brief at 27.) The Grahams further argue that because they had no burden to meet in this case, they were "prejudiced by a requirement to produce evidence to disprove elements of the case in summary judgment." (**_Id._**)

The **_Ertel_** court held that,

> a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

**_Ertel_**, 674 A.2d at 1042, quoted by trial court memorandum, 11/2/18 at 4-5.

The plain language of our Rules of Civil Procedure, however, belies the Grahams' argument. Indeed, Rule of Civil Procedure 1035.3 explicitly prohibits a non-moving party from resting upon the mere denials of the

pleadings; further, Rule 1035.3 requires a non-moving party to file a response to a motion for summary judgment in which the non-moving party identifies "evidence in the record establishing the **facts essential to the [] defense** which the motion cites as not having been produced." Pa.R.Civ.P. 1035.3(a)(2) (emphasis added). ***See also Am. S. Ins. Co. v. Halbert***, 203 A.3d 223, 227 (Pa.Super. 2019) (reiterating that a non-moving party may not rely upon mere denials of the pleadings).

Accordingly, the trial court did not improperly assign the burden of proof to the Bartons.

## II.

Next, the Grahams argue that the trial court erred in granting summary judgment in favor of the Bartons after concluding, as a matter of law, that the Lease terminated by operation of law. (Grahams' brief at 12.) The Grahams further argue that an oil and gas lease does not expire and is not forfeited when the lessee acts in good faith to extract and produce the oil and gas, and that the trial court improperly relied upon our decision in ***Hite v. Falcon Partners***, 13 A.3d 942 (Pa.Super. 2011). (Grahams' brief at 22-25.)

As explained by this court:

> "A lease is in the nature of a contract and is controlled by principles of contract law." ***T.W. Phillips Gas & Oil Co. v. Jedlicka***, [] 42 A.3d 261, 267 ([Pa.] 2012) ("***Jedlicka***"). As such, a lease must be construed in accordance with the terms of the lease agreement as manifestly expressed, and "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the

construction to be given the agreement." *Id.* (quoting *J.K. Willison v. Consol. Coal Co.*, [] 637 A.2d 979, 982 ([Pa.] 1994)). The party seeking to terminate the lease bears the burden of proof. *Jedlicka*, 42 A.3d at 267.

*Heasley v. KSM Energy, Inc.*, 52 A.3d 341, 344 (Pa.Super. 2012).

At this juncture, we shall set forth the relevant language contained in the Lease at issue. The record reflects that the Lease provides a primary term of 15 years "and so long thereafter as oil or gas can be produced in paying quantities." (Trial court memorandum, 11/2/18 at 2; Complaint, Exhibit 5; R.R. at 34a.) The Lease further provides for royalty payments when gas is found in paying quantities. (*Id.*) The Lease also requires the lessee to pay a rental of $54 per year "until drilling operations are begun." (*Id.* at 2-3.)

As this court further explained:

> Within the oil and gas industry, oil and gas leases generally contain several key provisions, including the granting clause, which initially conveys to the lessee the right to drill for and produce oil or gas from the property; the habendum clause, which is used to fix the ultimate duration of the lease; the royalty clause; and the terms of surrender. . . .
>
> * * *
>
> Typically, . . . the habendum clause in an oil and gas lease provides that a lease will remain in effect for as long as oil or gas is produced "in paying quantities." Traditionally, use of the term "in paying quantities" in a habendum clause of an oil or gas lease was regarded as for the benefit of the lessee, as a lessee would

not want to be obligated to pay rent for premises which have ceased to be productive, or for which the operating expenses exceed the income. More recently, however, and as demonstrated by the instant case, these clauses are relied on by landowners to terminate a lease.

[***Jedlicka***, 42 A.3d] at 267-268.

Our Supreme Court has long held that "[w]here a lessor's compensation is subject to the volume of production, the period of active production of oil or gas is the measure of the duration of the lease." ***Clark v. Wright***, [] 166 A. 775, 776 ([Pa.] 1933). By contrast,

[w]here [a] lessor's compensation is a definite and fixed amount unrelated to the volume of production, the duration of the lease is not measured by the length of time the mineral is actually extracted and marketed; but by the time during which the lease provides that the lessor shall receive the fixed rental. Under these latter circumstances, it can make no difference to lessor whether 100 or 1,000,000 cubic feet of gas is produced.

***Id.***

Two leading cases in this [Commonwealth] illustrate these rules. [1] In ***Cassell v. Crothers***, [44 A. 446 ([Pa.] 1899)], the clause under consideration reads: "as long thereafter as oil or gas is found in the land described in paying quantities." The remuneration which the lessor was to obtain for the use of his land was on a royalty basis and not on a flat rental basis. . . . [The Supreme Court held] that in an oil lease for a fixed period and "as long thereafter as oil is

found in paying quantities," where the lessor's compensation is one-eighth of the oil produced, the tenancy as to the surface of the land, after the expiration of the fixed period, and after the fact that oil is not being found and produced in paying quantities becomes susceptible of proof, is a tenancy in the nature of a tenancy at will, and if not actually terminated by mutual consent, or continued by mutual consent in order that further exploration be made, may be terminated by either party." . . .

[2] The other case . . ., and typical of the second rule as to compensation, is that of **Summerville v. Apollo Gas Co.**, [56 A. 867 ([Pa.] 1904)], wherein, under the terms of the lease, the lessee had the right to hold the premises "for and during the term of two years . . . and as much longer as oil and gas are found in paying quantities, or the hereinafter described rental is paid." The lessee failed to market any gas during the extended period, but retained it in the well, although the evidence indicated the well would produce one million feet per day. The lower court instructed the jury to bring in a verdict for the defendant on the ground that gas was found in paying quantities. [The Pennsylvania Supreme] court affirmed the judgment below, and in its opinion stated that it may be that for sometime the lessee was not able to find a purchaser for the gas, "but that was not the affair of the lessors; that they are not interested in the proceeds of the sale of the gas. Their rights under the agreement extended only to the receipt of a stipulated annual rental for each well." (Numerals in brackets supplied).

> [***T.W. Phillips Gas and Oil Co. v. Komar***, 227 A.2d 163, 165 (Pa. 1967)] (emphasis and some internal quotation marks omitted) (quoting ***Clark v. Wright***, [] 166 A. 775, 776 ([Pa.] 1933).

***Heasley***, 52 A.3d at 344-345.

The Grahams argue that the Lease at issue is a ***Summerville*** lease, meaning that the

> production of natural gas pursuant to this [L]ease is not tied to the royalty received by [the Bartons], and as a result, the objective production of the [Mellish W]ell is irrelevant to the determination of the validity of the [L]ease. The [L]ease at issue in this case does not and cannot be terminated and transformed into a tenancy at will by a lack of, or lapse in, production of oil and gas.

Grahams' brief at 17, citing ***McCausland v. Wagner***, 78 A.3d 1093, 1101 (Pa.Super. 2013). The Bartons, however, contend that the Lease is a royalty-based lease, and that the continued "payment of delay rentals alone, after the expiration of the primary term, and after a once-productive well has been drilled, is inapplicable to continuation of the leasehold." (Bartons' brief at 19.)

Here, the Grahams admit that the Mellish Well[3] is currently disconnected from any tanks and commercial distribution systems for the sale of oil and/or gas and that the well last produced gas on June 26, 1993. (Grahams' response to Bartons' request for admissions at ¶ 6, Grahams' responses to Bartons'

---

[3] The Mellish Well is the only well that exists on the Property; and no oil and/or gas has been sold from the Mellish Well in excess of six years. (Grahams' response to Bartons' request for admissions at ¶¶ 1, 3, 5; R.R. at 92a-93a.)

interrogatories at ¶ 4; R.R. at 93a, 95a.)  The record further reflects that the Grahams admit to paying only delay rental payments for the Mellish Well over the past six years.  (Grahams' response to Bartons' request for admissions at ¶ 9; R.R. at 94a.)  The Bartons aver that they have not accepted and/or cashed any checks for delay rental payments; and the Grahams admit that the Bartons have not cashed any checks tendered by the Grahams. (Complaint at ¶ 44, R.R. at 9a; answer and new matter at ¶ 44, R.R. at 71a.)

The trial court, relying in part on our decision in **Hite**, concluded that the Lease expired "by its own terms" and that the Bartons were entitled to summary judgment.  (Trial court memorandum, 11/2/18 at 13-14.)  We find that **Hite** controls here.  In **Hite**, the parties executed oil and gas leases in 2002 and 2003 that granted the lessee the right to enter the property for the purposes of oil and gas production for the term of one year and,

> as long thereafter as oil or gas or either of them is produced from the property, or as operations continue for the production of oil or gas, or as lessee shall continue to pay lessors two ($2.00) dollars per acre as delayed rentals, or until all oil and gas has been removed from the property, which ever shall last occur.

**Hite**, 13 A.3d at 944 (citation and extraneous capitalization omitted).  As of 2008, the lessee failed to commence any drilling operations on the property and the lessors sent notice declaring termination of the leases as the result of lessee's inaction.  **Id.**  The trial court granted the lessors' motion for summary judgment.  This court affirmed the trial court's order, holding that once a

primary lease term expires, the "mere payment of delay rentals alone" does not preserve a lessee's drilling rights. *Id.* at 948. This court further stated that even if a party were to accept delay rental payments after the expiration of the primary term as implied extensions of the lease, such extensions cease when a party refuses to accept further delay rental payments. *Id.* at 949 n.8.

Nevertheless, the Grahams contend that the trial court improperly relied upon the holding in *Hite*, relying on an unpublished decision from the United States Court of Appeals for the Third Circuit, *Smith v. Steckman Ridge, LP*, 590 Fed. Appx. 189 (3d Cir. 2014), in which the Third Circuit applied Pennsylvania law.[4] In *Smith*, the Third Circuit found *Hite* to "not apply to leases where the [lessee] acts in good faith, extracts reserves during the primary term of the lease, and does not attempt to indefinitely preserve extraction rights without compensating the lessor for the dormant reserves in accord with habendum and shut-in clauses." *Id.* at 199, citing *Hite*, 13 A.3d at 948-950.

The Grahams' reliance on *Smith* is misplaced. In *Smith*, the parties executed a dual-purpose lease for the extraction and storage of gas for a primary term of five years. *Id.* at 191. Unlike the Lease in the instant case, the lease in *Smith* contained provisions pertaining to the conversion of the

---

[4] The Grahams acknowledge, and we note, that *Smith* is not binding authority on this court, although it may be used for persuasive value. (*See* Grahams' brief at 25 n.3; *Cambria-Stoltz Enterprises v. TNT Investments*, 747 A.2d 947, 952 (Pa.Super. 2000), *appeal denied*, 795 A.2d 970 (Pa. 2000), citing *Martin v. Hale Products, Inc.*, 699 A.2d 1283, 1287 (Pa.Super. 1997).)

lease from gas production to gas storage. *Id.* The Third Circuit specifically noted that *Hite* "did not address what effect a dual purpose lease or a shut-in clause would have upon a delay rental payments clause." *Id.* at 199.

Based on our review of the record, we find that the trial court neither abused its discretion nor erred as a matter of law when it granted the Bartons' motion for summary judgment. Indeed, pursuant to the Lease terms and this court's holding in *Hite*, the primary term in the Lease ended when production ceased and the Bartons refused the Grahams' delay rental payments. *Hite*, 13 A.3d at 949 n.8.

## III.

Finally, the Grahams contend that the trial court erred by granting summary judgment while discovery was still ongoing. (Grahams' brief at 7.) Specifically, the Grahams argue that discovery responses from the Bartons—in the form of two sets of requests for production of documents—were still outstanding at the time the Bartons presented their motion for summary judgment. (*Id.*) The Grahams further aver that the trial court overlooked a genuine issue of material fact. (*Id.* at 10.)

> In Pennsylvania, "**parties must be given reasonable time to complete discovery** before a trial court entertains any motion for summary judgment[.]" *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1124 (Pa.Super. 2004) (emphasis added).
>
> . . . .

> We, nevertheless, recognized that "the party seeking discovery is under an obligation to seek discovery in a timely fashion." [*Id.*]; *see Fort Cherry School Dist. v. Gedman*, 894 A.2d 135, 140 (Pa.Super. 2006) (reasoning "[t]he Pennsylvania Rules of Civil Procedure do not give [parties] an unlimited amount of time to conduct discovery"). However, this Court has unequivocally stated that the purpose of Rule 1035.2 "is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed." *Burger v. Owens Illinois, Inc.*, 966 A.2d 611, 618 (Pa.Super. 2009), quoting *Gerrow* [*v. John Royle & Sons*, 813 A.2d 778,] 781-782 [(Pa. 2002)]. Moreover, "[t]he adverse party must be given adequate time to develop the case and the motion [for summary judgment] will be premature if filed before the adverse party has completed discovery relevant to the motion." *Id.*

*Anthony Biddle Contractors, Inc. v. Preet Allied Am. Street, LP*, 28 A.3d 916, 928-929 (Pa.Super. 2011) (footnote omitted).

Here, the Grahams aver that they sought to acquire tax records from the Bartons for the Barton Equity Partnership that would "reveal that [the Bartons] and their predecessors in interest have been receiving and accepting regular payment under the lease." (Grahams' brief at 8.) As discussed in detail *supra*, this claim is belied by the record. The Grahams further argue that they made delay rental payments to the Bartons' predecessors in interest and in so doing, the Grahams satisfied their duties under the lease. (*Id.* at 10-11.)

As noted in **Hite**, this is of no import to the case at bar. Indeed, the primary term in the lease at issue ended when production ceased and the Bartons refused the Grahams' delay rental payments. **Hite**, 13 A.3d at 949 n.8. Put another way, the Bartons' refusal to cash the Grahams' delay rental payments—that the Grahams admit—is not a genuine issue of material fact. (**See** answer and new matter at ¶ 44, R.R. at 71a.) Accordingly, we find that the trial court did not err when it granted the Bartons' motion for summary judgment because relevant discovery had been completed and no genuine issue of material fact existed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/26/2020</u>