## T. W. Phillips Gas and Oil Company *v.* Komar, Appellant.

Argued October 5, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert C. Earley,* for appellants.

*John L. Wilson,* with him *William T. Pierce,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 14, 1967:

This is an appeal by defendants, Anna Komar and Michael F. Komar, from a final decree in equity, enjoining them from interfering with the plaintiff's use of a gas well on appellants' property. Appellants' predecessor in title granted the appellee an oil and gas lease covering the tract of land now owned by the appellants. The lease was granted on February 28, 1933, and recorded in Indiana County. The primary term

of the lease was for a period of 20 years. The appellees commenced drilling a well on August 23, 1948, and completed it on January 15, 1949, resulting in the production of a gas well in paying quantity.

The well was not put into production in the plaintiff's gas distribution system. It was capped, pending the time when pipelines would be laid in the vicinity of the well, and at a time the company required the gas from the well.

The material facts in this controversy are not in dispute. The dispute concerns the interpretation of the lease agreement. The pertinent provision providing that: "In consideration of the above demise, said second party (i.e., lessee) agrees to deliver, in pipe line unto said first party (i.e., lessors) 1/8 part of the oil produced and saved from the premises.

"Should any well not produce oil, but produce gas in paying quantities, and the gas therefrom be sold off the said premises, the consideration to the said first party (i.e., lessors) for the gas from each well from which gas is marketed shall be as follows:

"At the rate of $200 per year while the well shows a pressure of 200 or more lbs., per square inch, upon being shut in 5 minutes in 2 inch pipe or 30 minutes in larger pipe; at the rate of $100 per year, while the well shows a pressure of 100 or more lbs., per square inch, and less than 200 lbs., per square inch upon being shut in 5 minutes in 2 inch pipe, or 30 minutes in larger pipe; at the rate of $50 per year while the well shows a pressure of less than 100 lbs., per square inch, upon being shut in 5 minutes in 2 inch pipe or 30 minutes in larger pipe; to be paid quarterly from completion to abandonment of well.

"While gas is being sold off these premises, providing the gas pressure is high enough, first party, i.e. (lessors) may have gas free of costs for domestic purposes in one dwelling on said premises to the extent of

200,000 cubic feet per year, first party (i.e., lessors) to make the necessary connections and to assume all risk in using said gas."

The gas well showed a pressure of less than 100 lbs. per square inch, and, in accordance with the terms of the lease, the payment to the lessors was at the rate of $50 per year, payable in quarterly payments. Lessee paid to the lessor the quarterly payments at the rate of $50 a year until January 25, 1959. The appellant, Michael F. Komar, upon receipt of the quarterly payment in April, 1959, wrote to the appellee, informing it that he had instructed his attorney to take action against the company and returned the check for the current quarterly payment, which was payable to his parents, George and Anna Komar. Appellee continued to make out checks to George and Anna Komar for the quarterly payments, and instead of sending them to the lessors, held them at the company's office. This procedure continued until the quarter ending January 25, 1963, when an escrow account for the benefit of the Komars was set up on the company's official records, and this procedure continued to the time of this controversy. The lessors were not notified of this method adopted by the company, nor did the lessors take any action.[1] Michael Komar considered the lease terminated.

Michael Komar, on September 21, 1965, ordered the appellee's workmen off the premises and to remove the equipment and supplies taken there for the purpose of piping the well into the distribution system of the company. The company immediately sought an injunction, which was granted.

The appellants' contention is that: (1) the lease by its terms makes the compensation of the lessors de-

[1] The record indicates that the property is owned by Anna Komar and Michael Komar, Michael succeeding to the interest of his father, George Komar, in April of 1962.

pendent upon the marketing of gas by the lessee; (2) the failure of the lessee to market the gas within a reasonable time after the expiration of the primary term of the lease, without a justifiable excuse, created a tenancy at will, which tenancy was extinguished by the lessors in March, 1959, by serving written notice of the termination of the lease upon the lessee; (3) the failure of the lessee to compensate the lessors after January, 1959, or to market the gas from the well for an unreasonable period without justifiable excuse, constituted abandonment of the lease by the lessee.

The chancellor said: "What were the terms of the lease? From a careful reading of this lease it appears to this Court that the T. W. Phillips Gas and Oil Company was obligated to pay to the Komars a rental based specifically upon the pressure per square inch upon the gas being shut in five minutes in a two inch pipe or thirty minutes in a larger pipe. This Court further believes that the T. W. Phillips Gas and Oil Company was obligated to pay this amount whether or not gas was sold off the premises. See Shrade v. T. W. Phillips Gas and Oil Company, 44 Pa. Superior Ct. 55." The chancellor relied upon the case of *Clark v. Wright,* 311 Pa. 69, 166 A. 775 (1933). The decree will be affirmed.

In *Clark,* supra, Mr. Justice (later Mr. Chief Justice) KEPHART, speaking for the Court, said: "It is apparent from a consideration of our cases that the basis of lessor's remuneration is the controlling factor in the construction of these clauses or ones of similar nature. [1] Where a lessor's compensation is subject to the volume of production, the period of active production of oil or gas is the measure of the duration of the lease. [2] Where lessor's compensation is a definite and fixed amount unrelated to the volume of production, the duration of the lease is not measured by the length of time the mineral is actually extracted and marketed; but by the time during which the lease

provides that the lessor shall receive the fixed rental. Under these latter circumstances, it can make no difference to lessor whether 100 or 1,000,000 cubic feet of gas is produced.

"Two leading cases in this State illustrate these rules. [1] In Cassell v. Crothers, 193 Pa. 359, the clause under consideration reads: 'as long thereafter as oil or gas is found in the land described in paying quantities.' The remuneration which the lessor was to obtain for the use of his land was on a royalty basis and not on a flat rental basis as in the present case. This court sustained the language of the court below in that case, where it stated, with care, the importance of the nature of the compensation in reaching its conclusion: 'Adopting a rule, then, that will do equity to both parties, we hold that in an oil lease for a fixed period and "as long thereafter as oil is found in paying quantities," *where the lessor's compensation is one-eighth of the oil produced,* the tenancy as to the surface of the land, after the expiration of the fixed period, and after the fact that oil is not being found and produced in paying quantities becomes susceptible of proof, is a tenancy in the nature of a tenancy at will, and if not actually terminated by mutual consent, or continued by mutual consent in order that further exploration be made, may be terminated by either party.'
. . .

"[2] The other case [one that appellants contend rules the present lease], and typical of the second rule as to compensation, is that of Summerville v. Apollo Gas Co., 207 Pa. 334, wherein, under the terms of the lease, the lessee had the right to hold the premises 'for and during the term of two years . . . and as much longer as oil and gas are found in paying quantities, or the hereinafter described rental is paid.' The lessee failed to market any gas during the extended period, but retained it in the well, although the evidence in-

dicated the well would produce one million feet per day. The lower court instructed the jury to bring in a verdict for the defendant on the ground that gas was found in paying quantities. This court affirmed the judgment below, and in its opinion stated that it may be that for sometime the lessee was not able to find a purchaser for the gas, 'but that was not the affair of the lessors; that they are not interested in the proceeds of the sale of the gas. Their rights under the agreement extended only to the receipt of a stipulated annual rental for each well.'" (Numerals in brackets supplied)

It is obvious that the Komar-Phillips lease by its terms providing for remuneration to lessors is unrelated to production of gas and requires payment of a fixed rental based upon gas pressure. This lease is in the category illustrated in the second rule above as to compensation to be paid lessors. *Summerville v. Apollo Gas Co.*, 207 Pa. 334, 56 A. 876 (1904).

Decree affirmed. Each party to pay own costs.

Mr. Justice ROBERTS concurs in the result.