Larry D. HEASLEY, Appellee

v.

KSM ENERGY, INC., a Pennsylvania Corporation; EXCO Appalachia, Inc., a Delaware Corporation; and their predecessors in title, successors and assigns and all other persons claiming any interest in the property described in this action,

v.

EOG Resources Appalachia, Inc., a Delaware Corporation; and their predecessors in title, successors and assigns and all other persons claiming any interest in the property described in this action.

Appeal of KSM Energy, Inc., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 6, 2011.
Filed July 27, 2012.

Edwin J. Strassburger, Pittsburgh, for appellant.

Sara J. Seidle, Clarion, for Heasley, appellee.

BEFORE: MUSMANNO, DONOHUE and COLVILLE*, JJ.

OPINION BY MUSMANNO, J.:

KSM Energy, Inc. ("KSM"), a Pennsylvania Corporation, EXCO Appalachia, Inc. ("EXCO"), a Delaware Corporation, and their predecessors in title, successors and assigns and all other persons claiming any interest in the property described in this action, appeal from the Order of the trial court entering judgment on the pleadings in favor of Larry D. Heasley ("Heasley"). We affirm.

In its Opinion, the trial court summarized the factual and procedural history of the instant appeal as follows:

[Heasley] filed a complaint asking the [trial court] to find that two gas and oil leases were terminated due to lack of production of both gas and oil. Heasley identified himself as the fee simple owner of the subject property and its mineral rights and ... [KSM] and EOG Resources Appalachia, Inc.[,] as the lessee[ ] or assignor[ ] of the gas and oil rights pursuant to the aforementioned leases. [ FN]

[ FN] EOG Resources was recently added as an additional defendant and, having been served with copies of the [C]omplaint and [M]otions for judgment on the pleadings, never responded.

According to Heasley, the leases, one for 56 acres and the other for 55 acres, were dated November 23, 1942 and granted KSM the right to mine, drill and operate the property for oil and gas and laying of pipe lines, as well as to build tanks, stations and structures necessary to care for those products. The primary term of 20 years from the date of the execution had expired, averred Heasley, and the secondary term, which was to continue "as long thereafter as oil or gas, or either of them, is produced therefrom," had also expired, he contended, insofar as neither gas nor oil was being produced from the leased premises.

... [B]oth leases contain the same relevant language:

It is agreed that this lease shall remain in full force for the term of twenty years from this date, and as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part, his heirs, executors, administrators, successors, or assigns.

KSM admitted the existence and dates of the leases, as well as the stated succession of the gas and oil rights. As for the terms of the leases, KSM answered that the language of those documents spoke for itself. With regard to the averred primary terms and expiration of the secondary term of the leases, KSM identified them as conclusions of law and thus declined to answer. **It**

* Retired Senior Judge assigned to the Superior Court.

admitted, however, that gas or oil was not being produced.

KSM also pleaded new matter, averring that it had, pursuant to Paragraph Second of the leases, tendered checks in the amount of $100.00 to Heasley, who had negotiated those payments and accepted them until February 2009 and was, as a result, estopped from denying the leases' ongoing validity. According to KSM, moreover, annual rental, not continued production, was all that was required to maintain the leases.

The paragraph to which KSM refers reflected its agreement, in consideration of the premises,

> [t]o pay Twelve and 50/100 ($12.50) dollars, each three months in advance, while the same is used off the premises, for the gas from each and every gas well drilled on said premises, having an open flow free to air of less than one hundred thousand cubic feet of gas in twenty-four hours, as measured by an orifice flow meter, when finally tubed and shut in. Said payments to be made on each well within sixty days after commencing to use the gas therefrom, as aforesaid, and to be paid each three months thereafter **while the gas from said well is so used.**

Pursuant to Paragraph Third, the annual rental increased to $200.00 if the pressure exceeded one hundred thousand cubic feet.

By way of reply, Heasley admitted that he had negotiated the annual $100.00 tenders through 2008, but had returned [KSM's] February 9, 2009 check and elected not to specifically address KSM's other claims, observing that they were conclusions of law. ... KSM filed its [M]otion for judgment on the pleadings on July 30, 2010, therein confirming that the primary term for the leases was 20 years and that "[t]he wells on the Leases [sic] Premises are no longer producing oil and gas." One month later, Heasley filed a[C]ounter-[M]otion for judgment on the pleadings on the grounds that production was a prerequisite to the leases' continuing enforceability.

Trial Court Opinion, 12/10/10, at 1–3 (emphasis added) (footnote in original).

On December 10, 2010, the trial court entered an Order denying KSM's Motion and granting judgment on the pleadings in favor of Heasley. On March 2, 2011, the trial court rendered its December 10, 2010 ruling applicable to third-party defendant EOG Resources Appalachia, Inc. A discontinuance was entered as to EXCO. Thereafter, KSM filed a Notice of appeal, followed by a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Statement of Matters Complained of on Appeal.

KSM presents the following claim for our review: "Whether the term of an oil and gas lease calling for a flat rental as opposed to a percentage royalty is determined by payment?" Brief for Appellant at 4. KSM argues that the Pennsylvania Supreme Court's decision in *T. W. Phillips Gas and Oil Co. v. Komar*, 424 Pa. 322, 227 A.2d 163 (1967) ("*Phillips*") controls the *Phillips*, the Supreme Court held that

> [w]here a lessor's compensation is subject to the volume of production, the period of active production of oil or gas is the measure of the duration of the lease. Where lessor's compensation is a definite and fixed amount unrelated to the volume of production, the duration of the lease is not measured by the length of time the mineral is actually extracted and marketed, but by the time during which the lease provides that the lessor shall receive the fixed rental....

*Phillips,* 227 A.2d at 165. KSM argues that the agreement language found to be controlling in *Phillips, i.e.,* "should any well . . . produce gas in paying quantities, and the gas therefrom be sold off the said premises" is indistinguishable from the language of its lease with Heasley, *i.e.,* "[w]hile the same be used off the premises." Brief for Appellant at 10. KSM asserts that, because there is no difference between "sold off the premises" and "used off the premises[,]". Heasley's compensation is a "definite and fixed amount." *Id.* at 11. Because it paid Heasley a fixed rental, KSM contends that the *Phillips* case is controlling. *Id.* We disagree.

■ In reviewing a trial court's grant of a motion for judgment on the pleadings, our scope of review is plenary. *Katzin v. Cent. Appalachia Petroleum,* 39 A.3d 307, 309 (Pa.Super.2012).

> Our review of a trial court's decision to grant . . . judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warranted a jury trial. In so reviewing, we look only to the pleadings and any documents properly attached thereto. Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.

*Id.* (quoting *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 86 (1995)).

■ "A lease is in the nature of a contract and is controlled by principles of contract law." *T.W. Phillips Gas & Oil Co. v. Jedlicka,* —— Pa. ——, 42 A.3d 261, 267 (2012) ("*Jedlicka* "). As such, a lease must be construed in accordance with the terms of the lease agreement as manifestly expressed, and "[t]he accepted and plain meaning of the language used, rather than

the silent intentions of the contracting parties, determines the construction to be given the agreement." *Id.* (quoting *J.K. Willison v. Consol. Coal Co.,* 536 Pa. 49, 637 A.2d 979, 982 (1994)). The party seeking to terminate the lease bears the burden of proof. *Jedlicka,* 42 A.3d at 267.

Within the oil and gas industry, oil and gas leases generally contain several key provisions, including the granting clause, which initially conveys to the lessee the right to drill for and produce oil or gas from the property; the habendum clause, which is used to fix the ultimate duration of the lease; the royalty clause; and the terms of surrender. . . .

\*        \*        \*

Typically, . . . the habendum clause in an oil and gas lease provides that a lease will remain in effect for as long as oil or gas is produced "in paying quantities." Traditionally, use of the term "in paying quantities" in a habendum clause of an oil or gas lease was regarded as for the benefit of the lessee, as a lessee would not want to be obligated to pay rent for premises which have ceased to be productive, or for which the operating expenses exceed the income. More recently, however, and as demonstrated by the instant case, these clauses are relied on by landowners to terminate a lease.

*Id.* at 267–68.

■ Our Supreme Court has long held that "[w]here a lessor's compensation is subject to the volume of production, the period of active production of oil or gas is the measure of the duration of the lease." *Clark v. Wright,* 311 Pa. 69, 166 A. 775, 776 (1933). By contrast,

> [w]here [a] lessor's compensation is a definite and fixed amount unrelated to the volume of production, the duration of the lease is not measured by the length

of time the mineral is actually extracted and marketed; but by the time during which the lease provides that the lessor shall receive the fixed rental. Under these latter circumstances, it can make no difference to lessor whether 100 or 1,000,000 cubic feet of gas is produced.

*Id.*

Two leading cases in this State illustrate these rules. [1] In *Cassell v. Crothers,* 193 Pa. 359 [44 A. 446 (1899) ], the clause under consideration reads: "as long thereafter as oil or gas is found in the land described in paying quantities." The remuneration which the lessor was to obtain for the use of his land was on a royalty basis and not on a flat rental basis. . . . [The Supreme Court held] that in an oil lease for a fixed period and "as long thereafter as oil is found in paying quantities," where the lessor's compensation is one-eighth of the oil produced, the tenancy as to the surface of the land, after the expiration of the fixed period, and after the fact that oil is not being found and produced in paying quantities becomes susceptible of proof, is a tenancy in the nature of a tenancy at will, and if not actually terminated by mutual consent, or continued by mutual consent in order that further exploration be made, may be terminated by either party." . . .

■ The other case . . . , and typical of the second rule as to compensation, is that of *Summerville v. Apollo Gas Co.,* 207 Pa. 334 [56 A. 876 (1904) ], wherein, under the terms of the lease, the lessee had the right to hold the premises "for and during the term of two years . . . and as much longer as oil and gas are found in paying quantities, or the hereinafter described rental is paid." The lessee failed to market any gas during the extended period, but retained it in the well, although the evidence indicated the well would produce one million feet per day. The lower court instructed the jury to bring in a verdict for the defendant on the ground that gas was found in paying quantities. [The Pennsylvania Supreme] court affirmed the judgment below, and in its opinion stated that it may be that for sometime the lessee was not able to find a purchaser for the gas, "but that was not the affair of the lessors; that they are not interested in the proceeds of the sale of the gas. Their rights under the agreement extended only to the receipt of a stipulated annual rental for each well." (Numerals in brackets supplied)

*Phillips,* 227 A.2d at 165 (emphasis and some internal quotation marks omitted) (quoting *Clark v. Wright,* 311 Pa. 69, 166 A. 775, 776 (1933)).

■ In the instant case, the Lease Agreement at issue provided the following relevant terms:

It is agreed that this lease shall remain in force for the term of twenty years from this date, and **as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part,** . . . .

First: To deliver to the credit of the first parties, their heirs or assigns, free of cost in the tanks or pipe line to which he may connect his well, the equal one-eighth part of all oil produced and saved from the leased premises.

Second: To pay Twelve and 50/100 ($12.50) dollars, each three months in advance, while the same is used off the premises, having an open flow free to air of less than one hundred thousand cubic feet of gas in twenty-four hours, as measured by an orifice flow meter, when finally tubed and shut in. Said payments to be made on each well within sixty days after commencing to use the gas therefrom, as aforesaid, and to be

paid each three months thereafter *while the gas from said well is so used.*

Third: To pay Fifty ($50.00) Dollars, each three months in advance, while the same is used off premises, for the gas from each and every gas well drilled on said premises, having an open flow free to air of in excess of one hundred thousand cubic feet of gas in twenty-four hours, as measured by an orifice flow meter, when finally tubed and shut in; until such well fails to show an open flow of in excess of one-hundred thousand cubic feet of gas in twenty-four hours, as measured by an orifice flow meter, after which time a quarterly rental of twelve and 50/100 ($12.50) shall be paid for such well. Said payment to be made on each well within sixty days after commencing to use the gas therefrom, as aforesaid, and to be paid each three months thereafter *while the gas from said well is so used.*

Amended Complaint, Exhibit A (Lease Agreement, p. 2) (emphasis added).

Upon review, we conclude that the provisions of the Lease Agreement restrict its duration based upon production. In so holding we distinguish the Supreme Court's decision in *Phillips.*

In *Phillips,* the lease agreement provided, in relevant part, as follows:

Should any well not produce oil, but produce gas in paying quantities, and the gas therefrom be sold off the said premises, the consideration to the said first party (*i.e.,* lessors) for the gas from each well from which gas is marketed shall be as follows:

At the rate of $ 200 per year while the well shows a pressure of 200 or more lbs., per square inch, upon being shut in 5 minutes in 2 inch pipe or 30 minutes in larger pipe; at the rate of $ 100 per year, while the well shows a pressure of 100 or more lbs., per square inch, and

less than 200 lbs., per square inch upon being shut in 5 minutes in 2 inch pipe, or 30 minutes in larger pipe; at the rate of $ 50 per year while the well shows a pressure of less than 100 lbs., per square inch, upon being shut in 5 minutes in 2 inch pipe or 30 minutes in larger pipe; **to be paid quarterly from completion to abandonment of well.**
While gas is being sold off these premises, providing the gas pressure is high enough, first party, *i.e.* (lessors) may have gas free of costs for domestic purposes in one dwelling on said premises to the extent of 200,000 cubic feet per year, first party (*i.e.,* lessors) to make the necessary connections and to assume all risk in using said gas.

*Phillips,* 227 A.2d at 163–64 (emphasis added). The provisions of the *Phillips* lease agreement required the lessor to be paid quarterly, regardless of production. *Id.* The lease agreement, by its terms, anticipated rentals to be paid, regardless of production, from the completion of the well until its abandonment. *Id.* Our Supreme Court accordingly held that the lease, "by its terms providing for remuneration to lessors[,] is unrelated to production of gas and requires payment of a fixed rental based upon gas pressure." *Id.* at 165. Accordingly, the Supreme Court upheld the decree enjoining the landowners from interfering with the lessee's use of its wells. *Id.*

By contrast, the Lease Agreement in the instant case set the duration of the lease for twenty years, and "as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part[.]" Lease Agreement, at p. 1 (emphasis added). Likewise, the Lease Agreement required KSM to tender payments only "while the gas from said well is so used[.]" Lease Agreement at p. 2 (Paragraph Second and Paragraph Third).

By this language, the Lease Agreement is similar to the production agreement described in *Caswell.* The Lease Agreement, by its terms, remained in effect only so long as production continued. When production ceased, the lease became an at-will tenancy, subject to termination by the lessor at any time. *See Phillips,* 227 A.2d at 165 (recognizing that when production ceased, the lease lapsed into a tenancy at-will).

As the trial court recognized in its Opinion, KSM admitted that gas or oil was not being produced. Trial Court Opinion, 12/10/10, at 2.

> [T]he leaseholds in this case became tenancies in the nature of tenancies at will at the time production ceased. They thus became subject to termination by either party. *See Caswell, supra.* Heasley elected to terminate them, first by ceasing to accept KSM's payments after 2009, and second and more definitively, by filing suit asking the court to deem the leases to be terminated. That was his right under the law.

*Id.* at 5.

Based upon the foregoing, we discern no error by the trial court in granting judgment on the pleadings in favor of Heasley. Accordingly, we affirm the Order of the trial court.

Order affirmed.