J-A23021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| RONALD K. TESKA, AND GIULIA MANNARINO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| EQT CORPORATION, EQT PRODUCTION COMPANY, AND EQT MIDSTREAM (EQUITRANS) | |
| Appellee | No. 1839 WDA 2013 |

Appeal from the Order entered October 22, 2013,
in the Court of Common Pleas of Greene County,
Civil Division, at No(s): 110-2013

BEFORE: DONOHUE, ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED AUGUST 26, 2014**

Ronald K. Teska and Giulia Mannarino, ("Appellants"), appeal *pro se* from the trial court's order sustaining the preliminary objections in the nature of a demurrer of EQT Corporation, EQT Production Company, and EQT Midstream (EQUITRANS), (collectively "EQT"). After careful consideration, we affirm.

Our review of the record indicates that on February 11, 2013, Appellants initiated this action against EQT alleging trespass, theft of minerals, and fraud. On March 5, 2013, EQT filed preliminary objections in the nature of a demurrer. On March 22, 2013, Appellants filed an amended complaint in which they alleged only fraud and trespass. On April 5, 2013, EQT preliminarily objected to Appellant's amended complaint. On April 23,

2013, Appellants answered EQT's preliminary objections to Appellant's amended complaint. On September 13, 2013, the trial court conducted oral arguments on EQT's preliminary objections. On October 22, 2013, the trial court filed an order and memorandum sustaining EQT's preliminary objections and explaining its order.

In its October 22, 2013 memorandum, the trial court summarized the factual and procedural background:

> In 1913, G.E. Houston and Florence Houston leased to Carnegie Natural Gas Company a tract of land containing 22 acres. The lease provided: "... this lease shall remain in force for the term of 5 years from this date and as long thereafter as oil and gas, or either of them, is produced from the said land by the said party of the second part, his successors and assigns." Ex. A-1 Amended Complaint. The lease further provided that in consideration for the right to produce oil and gas the lessors would be paid "Seventy five ($75.00) Dollars each three months in advance for the gas from each and every gas well drilled on the premises, the product from which is marketed and used off the premises, said payment to be made ... each three months thereafter while the gas from said well is so marketed and used". *Id.*
>
> By various conveyances and assignments[,] [Appellants] now stand in the shoes of the Houstons as lessors and [EQT] has succeeded Carnegie Natural Gas as lessee. In 2012, [Appellants] filed a Declaratory Judgment action asking that we declare that they were the rightful owners of Well 650456, drilled pursuant to the 1913 lease, based on the alleged lack of production from that well. By a document recorded October 13, 2011, in the Recorder's Office of Greene County, Pennsylvania, [EQT] surrendered the lease. [Appellants] attempted to buy the well, but the parties could not agree on the terms, hence the lawsuit. EQT demurred and we sustained the demurrer, holding that the lease provided that the lessee had the right to move its fixtures, including the casing of the well. Furthermore, the Oil and Gas Act, 58 P.S. §601.101 et seq., provides that nonproducing gas wells must be plugged by the owner, and

[Appellants] were not the owners. [Appellants] appealed but Superior Court affirmed.

They have now taken a different tack. They filed a new Complaint alleging fraud by EQT. It is their theory in this proceeding that the tender to them of the flat rental amount by [EQT] was a misrepresentation that the well continued to produce when in fact it did not. According to the Amended Complaint, the well produced at least until 2001. From 2005 through 2009, it did not produce, except for a minimal amount in 2006 and 2007. [Appellants] have no information for 2010, but allege the well was shut in 2011.

The Amended Complaint raises counts of fraud and trespass. The count of fraud is premised on the tender of royalty checks year after year when [EQT] knew that the well was not producing. To [Appellants,] these tenders were a willful misrepresentation. The count of trespass is based on entries onto the land at times when [EQT] knew there was no valid lease. [EQT] filed Preliminary Objections in the nature of a demurrer.

Trial Court Memorandum, 10/22/13, at 1 - 3.

The trial court sustained EQT's preliminary objections and Appellants filed a timely notice of appeal. The trial court did not order compliance with Pa.R.A.P. 1925.

Appellants present the following issues for our review:

[1.] Whether the [trial] court committed an error or abused its discretion in making the determination that continued payment of flat rate royalty by lessees on a nonproductive well, whose lease was held by production and where lessors were not informed that production had ceased, was not a representation but merely a "contractual obligation".

[2.] Whether the [trial] court committed an error or abused its discretion in making the determination that continued payment of flat rate royalty by lessees on a nonproductive well, whose lease was held by production and where lessors were not informed that production had ceased,

- 3 -

established a tenancy at will without the knowledge and mutual consent of lessors.

Appellants' Brief at 4.

We recognize:

As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

*Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 436 (2004) (citations and internal quotation marks omitted). *Accord, Friedman v. Corbett,* ––– Pa. ––––, 72 A.3d 255, 257 n. 2 (2013). Furthermore,

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint ... Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Joyce v. Erie Ins. Exch.,* 74 A.3d 157, 162 (Pa. Super.2013) (citation omitted).

**Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.,** —

A.3d — at 3 (Pa. Super. 2014), 2014 WL 1717029 at 3 (May 1, 2014).

Initially, we note that Appellants' instant fraud and trespass action may be barred by *res judicata* and collateral estoppel as averred by EQT in their preliminary objections. *See generally* EQT's Preliminary Objections to [Appellants'] Amended Complaint, 4/5/13.[1] Appellants previously instituted a declaratory judgment action against EQT. As the trial court observed, in the 2012 declaratory judgment action, Appellants "ask[ed] that we declare that [Appellants] were the rightful owners of Well 650456, drilled pursuant to the 1913 lease, based on the alleged lack of production from that well." Trial Court Memorandum, 10/22/13, at 1. In resolving the ensuing appeal, this Court expressed that "[e]ven if [EQT] 'abandoned' the gas well at some point, **the lease itself did not terminate until October 13, 2011,** when EQT Production Company filed a Release and Surrender of Oil and Gas Lease in the Greene County Recorder of Deeds." ***Teska, et al. v. EQT Corporation, et al.,*** 82 A.3d 463 (Pa. Super. 2013) (unpublished memorandum), *appeal denied* 85 A.3d 484 (Pa. 2014).

_____

[1] The trial court's order did not "specify or discuss" this objection "in light of [its] disposition of the case[.]" Trial Court Memorandum, 10/22/13, at 3. However, "[i]t is well settled that this Court may affirm the decision of the trial court if it is correct on any grounds." ***Liberty Mut. Ins. Co. v. Domtar Paper, Co.,*** 77 A.3d 1282, 1286, *citing* ***Lilliquist v. Copes–Vulcan, Inc.,*** 21 A.3d 1233, 1235 (Pa. Super. 2011) (stating that an appellate court may affirm a trial court's decision on any grounds supported by the record on appeal).

In ***BuyFigure.com, Inc. v. Autotrader.com, Inc.***, 76 A.3d 554, 560 (Pa. Super. 2013), we determined that "res judicata and collateral estoppel applied to bar [a]ppellant's claims, because the claims and issues in both the federal and state courts had identical characteristics, and the parties were either identical or had privity with one another, so as to be bound in state court by the decisions and rulings of the federal court."  We explained:

> As [the Pennsylvania Commonwealth] Court recently decided in *Callowhill Center Associates, [LLC v. Zoning Board of Adjustment,* 2 A.3d 802 (Pa. Cmwlth. 2010)]*, the doctrine of res judicata/collateral estoppel applies not only to matters decided, **but also to matters that could have, or should have, been raised and decided in an earlier action.**  Our decision in *Callowhill Center Associates* recognized well-settled precedent that collateral estoppel applies if there was adequate opportunity to raise issues in the previous action. *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786 (1965); *Hochman v. Mortgage Finance Corporation,* 289 Pa. 260, 137 A. 252 (1927).

> *Bell v. Township of Spring Brook,* 30 A.3d 554, 558 (Pa. Cmwlth. 2011) (emphasis supplied).

> Significantly, as emphasized by our Pennsylvania Supreme Court:

> > As pertinently stated in *Hochman v. Mortgage Fin. Corp.,* 289 Pa. 260, 263, 137 A. 252, 253 (1927); 'The [doctrine of res judicata] should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose,-a second trial on the same cause between the same parties.  The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights.  If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule.' (Emphasis supplied.)

*Stevenson v. Silverman,* 208 A.2d 786, 788 (Pa. 1965).

***Buyfigure.com, Inc.,*** 76 A.3d at 561.

In addressing EQT's *res judicata* and collateral estoppel preliminary objections, Appellants conceded that "**[a]lthough the parties, in some instances, are the same and the facts may be similar it is because the claims all center around the same lease and the same gas well[.]**" Appellants' Memorandum in Opposition to [EQT's] Preliminary Objections to [Appellants'] Amended Complaint, 4/23/13, at 11 (unnumbered) (emphasis supplied). Significantly, Appellants acknowledged that their prior action "was a request for a declaratory judgment due to the controversy that arose regarding the **parties' rights** to this abandoned well." *Id.* at 12 (unnumbered) (emphasis supplied).

Instantly, Appellants' claims of fraud involve the payments they received from EQT, which was a party in the prior action. *See* Appellants' Brief at 7-8. Further, Appellants' trespass count relates to the same property, and could have been raised in the prior action. Appellants had an "adequate opportunity" to raise their fraud and trespass issues, and to "appear and assert their rights." ***Buyfigure, supra,*** at 561. Therefore, Appellants' claims and issues in the present action "had identical characteristics, and the parties were either identical or had privity with one another, so as to be bound" by the prior determination that the lease did not terminate until October 13, 2011, thereby precluding any finding of fraud

against EQT for continued payments, or for trespass for EQT's prior entries onto Appellants' land.

The applicability of *res judicata* and collateral estoppel notwithstanding, we find that Appellants' challenge to the trial court's order sustaining EQT's preliminary objections is without merit. Appellants contend that "[c]ontinued payments by [EQT] of the flat rate royalty on the non-productive gas well … [was] a fraudulent misrepresentation that production continued," and that the payments "did not establish a tenancy at will[.]" Appellants' Brief at 9.

In rebutting Appellants' arguments, the trial court explained:

> Here, [Appellants] allege that the well did not produce, that [EQT] knew it was not producing, that [EQT] nonetheless tendered the royalty payment, thereby inducing [Appellants] to believe that the lease was still in effect. Does the tender of continued royalty payments on a nonproductive well constitute fraud, or can it?
>
> The elements of fraud are: (1) a misrepresentation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury which was caused by the reliance. Gibbs v. Ernst, 647 A.2d 802 (Pa. 1994). Furthermore, these elements must be stated with particularity. McGinn v. Vallotti, 525 A.2d 732 (Pa. Super 1987).
>
> Here, the alleged misrepresentation is the "continued remuneration to [Appellants] ... that gave rise to their presumption as required to maintain the lease, as compensation was dependent on the act of production." Amended Complaint Par. 28. There is no allegation of a more direct deception, such as a statement by [EQT] that "Your well continues to produce" or words to that effect. That being the case, the issue is whether the tender of a flat royalty payment by Lessee for a

nonproducing well is a misrepresentation. It is not. It is merely the tender of a royalty payment.

The question of what such a payment represents was answered in the recent case of Heasley v. KAS Energy Inc., 52 A.3d 341 (Pa. Super 2012). In Heasley, the defendant was the holder of a nonproductive lease who continued to tender flat royalty payments even in the absence of any production. Defendant argued that so long as those payments were made, the lease stayed in effect regardless of production. Our Superior Court held that the duration of the Heasley lease was according to its terms for the primary term and "so long thereafter as oil or gas, or either of them, is produced therefrom". [Id. at 347.] This is identical to the language found in the lease before us. The Court further held that "[w]hen production ceased, the lease became an at-will tenancy subject to termination by the Lessor at any time". [Id.]

The tender of a contracted for rent payment is not a representation, but a contractual obligation. The cessation of production may have marked the end of the extended term of the lease so as to permit legal enforcement, but it did not mark the termination of the lease. That event occurred when [Appellants] returned the royalty check and filed an Affidavit of Non-Production. Until then, the lease was in effect and its terms required payment of royalties to [Appellants]. [Appellants] argue that the creation of a tenancy at will requires "mutual knowledge and consent". Memorandum In Opposition (unnumbered) pg. 6. On the contrary, a tenancy at will occurs when production ceases but payments continue.

For the reason that [Appellants] have not stated a cause of action for fraud, their count in trespass must also fail because during the term of the tenancy at will [EQT] still had all rights granted by the original lease.

Trial Court Memorandum, 10/22/13, at 3-5. We agree.

We have explained:

Within the oil and gas industry, oil and gas leases generally contain several key provisions, including the granting clause, which initially conveys to the lessee the right to drill for and produce oil or gas from the property; the habendum clause, which is used to fix the ultimate

duration of the lease; the royalty clause; and the terms of surrender....

\* \* \*

Typically, ... the habendum clause in an oil and gas lease provides that a lease will remain in effect for as long as oil or gas is produced "in paying quantities." Traditionally, use of the term "in paying quantities" in a habendum clause of an oil or gas lease was regarded as for the benefit of the lessee, as a lessee would not want to be obligated to pay rent for premises which have ceased to be productive, or for which the operating expenses exceed the income. More recently, however, and as demonstrated by the instant case, these clauses are relied on by landowners to terminate a lease.

[*T.W. Phillips Gas & Oil Co. v. Jedlicka,* 42 A.3d 261,] 267-268 [(Pa. 2012)].

Our Supreme Court has long held that "[w]here a lessor's compensation is subject to the volume of production, the period of active production of oil or gas is the measure of the duration of the lease." *Clark v. Wright,* 311 Pa. 69, 166 A. 775, 776 (1933). By contrast,

[w]here [a] lessor's compensation is a definite and fixed amount unrelated to the volume of production, the duration of the lease is not measured by the length of time the mineral is actually extracted and marketed; but by the time during which the lease provides that the lessor shall receive the fixed rental. Under these latter circumstances, it can make no difference to lessor whether 100 or 1,000,000 cubic feet of gas is produced.

*Id.*

**Heasley v. KSM Energy, Inc.** 52 A.3d 341, 344-345 (Pa. Super. 2012).

In **Heasley,** we determined that the language of the gas lease prescribed the lease term by production, which created a tenancy at will that could be terminated by the landowner lessor. Specifically, we observed:

- 10 -

[T]he Lease Agreement in the instant case set the duration of the lease for twenty years, and "as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part[.]" Lease Agreement, at p. 1 (emphasis added). Likewise, the Lease Agreement required [appellant] to tender payments only "while the gas from said well is so used[.]" Lease Agreement at p. 2 (Paragraph Second and Paragraph Third). By this language, the Lease Agreement is similar to the production agreement described in *Cassell [v. Crothers,* 44 A 446 (Pa. 1899)]. []. The Lease Agreement, by its terms, remained in effect only so long as production continued. When production ceased, the lease became an at-will tenancy, subject to termination by the lessor at any time. *See [T.W.] Phillips [Gas and Oil Co. v. Komar,]* 227 A.2d [163,] 165 [(Pa. 1967)] (recognizing that when production ceased, the lease lapsed into a tenancy at-will).

*Id.* at 346-347. Based on the foregoing, we approved the trial court's recognition that:

[T]he leaseholds in this case became tenancies in the nature of tenancies at will at the time production ceased. They thus became subject to termination by either party. *See Cassell, supra.* Heasley elected to terminate them, first by ceasing to accept KSM's payments after 2009, and second and more definitively, by filing suit asking the court to deem the leases to be terminated. That was his right under the law.

*Id.* at 347 (citation omitted).

Applying **Heasley** to the lease language in this case, and consonant with the rationale espoused by our Supreme Court in **Clark, supra,** as cited in **Heasley**, we find that there was a tenancy at will between the parties which continued until Appellants "ceas[ed] to accept" additional payments from EQT, and "more definitively," after EQT filed a Release and Surrender of Oil and Gas Lease in the Greene County Recorder of Deeds on October 13, 2011. **Heasley,** 52 A.3d at 347. Because the lease was in effect at the

- 11 -

time EQT proferred the lease payments, EQT did not commit fraud in issuing the payments, nor did EQT's entry onto Appellants' property constitute trespass. Accordingly, "it is clear and free from doubt" that Appellants "will be unable to prove facts legally sufficient to establish the right to relief." ***Little Mountain, supra*.** We therefore affirm the trial court's order sustaining EQT's preliminary objections in the nature of a demurrer.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014