J-A06029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PAUL F. FRYE AND EDWARD FRYE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENN VIEW EXPLORATION, INC., | : | No. 919 WDA 2023 |

Appeal from the Order Entered July 7, 2023
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s):  2105 of 2021

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED: May 22, 2024**

In this oil and gas lease dispute, Paul F. Frye and Edward Frye ("the Fryes") appeal from the order of July 7, 2021, which denied their motion for summary judgment, granted the motion for summary judgment filed by Penn View Exploration, Inc., and entered judgment in favor of Penn View on its counterclaim. We affirm in part, reverse in part, and vacate the entry of judgment.

The trial court summarized the procedural history of this case as follows:

> On or about May 16, 2008, the Fryes entered into a lease with Atlas America, LLC regarding the oil and gas rights on their 69.4-acre parcel in Salem Township, Pennsylvania. On approximately February 17, 2011, Chevron Appalachia, LLC obtained the interests of Atlas under the lease by way of merger. In 2012, Chevron created an unconventional gas production unit on the land known as the Frye Unit, and created a drill pad site covering approximately three acres of the property. Chevron drilled three wells on this pad.

Chevron began producing gas from these wells in late 2012. Production continued through July 1, 2018, when a necessary connecting Equitrans pipeline was abandoned by Equitrans. Chevron did not find an alternative pipeline, and the wells have not produced since July 1, 2018. Present Defendant, Penn View, acquire[d] the Frye Unit assets from Chevron on March 1, 2019. Since that time, Penn View has obtained rights of way from neighboring property owners and obtained a $500,00.00 loan to finance the construction of a connecting pipeline. No gas has been produced since July 1, 2018 because the well has not been connected to the new pipeline. Penn View maintains that the well is still capable of producing at paying quantities if it is connected.

By letter dated May 20, 2021, [the Fryes notified Penn View of their intent to terminate the lease. Penn View responded with] a check for back payment of shut-in rentals. The Frye's refused to accept this payment by letter dated June 7, 2021. On June 9, 2021, the Fryes initiated this suit, seeking declaratory and injunctive relief terminating the lease. An amended complaint was filed on July 21, 2021. Penn View answered the amended complaint and set forth a counterclaim asserting that the Fryes had breached the lease by failing to provide access to the property and failed to provide Penn View notice and opportunity to cure any alleged breach. ...

Both parties have filed motions for summary judgment … . In their motion, [the Fryes] argue that no issues of material fact remain regarding the Fryes' decision to terminate the lease, and so they are entitled to a declaratory judgment stating that the lease is terminated. [Penn View] argues that because the lease is capable of producing in paying quantities in their judgment, the lease has not terminated in the manner asserted by [the Fryes]. In its motion, [Penn View] additionally argues that [the Fryes] did not follow the contractually mandated procedure for termination of [the] lease and so they have breached the lease as [a] matter of law.

Trial Court Order, 7/7/23, at 2-3. In an order dated July 7, 2023, the trial court denied the Fryes' motion for summary judgment, dismissed their complaint, and granted Penn View summary judgment on its counterclaim for breach of contract. This timely appealed followed.

- 2 -

The Frye's present the following issues for our review:

1. Was the oil and gas lease in question terminated on its own terms when [Penn View] failed to timely exercise its option to extend the term of the lease in the manner required in the event of shut-in?

2. [Were the Fryes] required to give [Penn View] notice of breach and an opportunity [to cure] under the provisions of a terminated oil and gas lease; and, if so, whether [the Fryes] provided adequate notice?

3. Where the trial court failed to consider whether the supposed breach of the oil and gas lease in question had caused the non-breaching party damages foreseeable by the breaching party when the lease was made, whether the trial court erred by entering summary judgment of breach in favor of [Penn View]?

Appellants' Brief at 4-5.

In their first issue, the Fryes argue the trial court erred in denying their motion for summary judgment. *See id*. at 20-30. They contend that the Lease terminated when Penn View failed to extend the term of the Lease during the period of shut-in. To support their claim, the Fryes explain that since July 1, 2018, the wells have been without production and shut-in, resulting in the Fryes not being paid any production royalties since then. *See id*. at 22. The Fryes contend that Penn View had the right to extend the term of the Lease during the shut-in period by tendering payments of the shut-in royalty. *See id*. at 25. They conclude, however, that the Lease became null and void when Penn View failed to act in accordance with the Lease. *See id*. at 27.

Our standard of review of an order granting or denying summary judgment is well-settled:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1179 (Pa. 2012) (citation omitted).

Instantly, we are called upon to review the trial court's interpretation of the Lease. Applicable to this lease dispute are the principles of contract and property law.

[A]n oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into play. The Supreme Court has aptly observed that the traditional oil and gas "lease" is far from the simplest of property concepts. In the context of oil and gas leases, the title conveyed is inchoate and initially for the purpose of exploration and development. If development during the primary term is unsuccessful, no estate vests in the lessee. If oil or gas is produced, the right to produce becomes vested and the lessee has a property right to extract the oil or gas. In such circumstances the lessee will be protected in accordance with the terms of the lease and will be required to operate the leasehold for the benefit of both parties.

*McCausland v. Wagner*, 78 A.3d 1093, 1100-01 (Pa. Super. 2013) (citations omitted). "Royalty-based leases are to be construed in a manner designed to promote the full and diligent development of the leasehold for the mutual benefit of both parties." *Id*. (citation omitted).

- 4 -

"[T]he object in interpreting instruments relating to oil and gas interests, like any written instrument, 'is to ascertain and effectuate the intention of the parties[]' … as reasonably manifested by the language of their written agreement." ***Szymanowski v. Brace***, 987 A.2d 717, 720, 722 (Pa. Super. 2009) (citations omitted). "When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." ***Id***. at 722 (citation and emphasis omitted).

To establish a breach of contract, a party must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." ***McCausland***, 78 A.3d at 1101 (citation omitted).

> Moreover, it is well established that the party seeking to terminate an oil and gas lease bears the burden of proof. We observe it is an oft-stated maxim that the law abhors a forfeiture. A forfeiture clause is enforceable, but only if it is expressed with clearness and certainty. The trial court must review the contract in its entirety, and a provision will not be construed to result in a forfeiture unless no other reasonable construction is possible.

***Id***. at 1102 (citations and quotation marks omitted).

In denying the Fryes' motion for summary judgment, the trial court offered the following:

> [The Fryes] argue that when the wells became shut-in, the lease became terminable at will and that they declared the lease terminated on this basis. The plain language of the lease provides that the lease is in effect for five years or "so much longer

thereafter as oil or gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee." On its face, the lease provides significant discretion to Penn View as to whether the well is capable of production, and this discretion by Penn View determines whether the lease is in effect.

The party seeking to terminate an oil and gas lease bears the burden of proof that the lease has terminated. ***Heasley v. KSM Energy, Inc.***, 52 A.3d 341, 344 (Pa. Super. 2012). The evidence provided by [the Fryes] shows that after its acquisition of the rights, Penn View made significant efforts to get the well back into productive status, including obtaining rights of way from neighboring property owners and obtaining a $500,000.00 loan to finance a connecting pipeline. At a minimum, these actions show that issues of fact exist as to whether Penn View acted in good faith in continuing to attempt to operate the well, as required by the standard set out in [***T.W. Phillips Gas & Oil Co. v.*** ] ***Jedlicka***. 42 A.3d 261, 276 (Pa. 2012). Because [the Fryes] have not met their burden in showing that no material facts exist to show that the lease has terminated by its own terms, their summary judgment motion must be denied.

Order, 7/7/23, at 5. We agree.

Our review reflects the Lease contains the following habendum provision, which sets the term of the Lease:

2. This lease shall continue in full force and the rights granted hereunder will be quietly enjoyed by the Lessee for a term of Five (5) year(s) and so much longer thereafter as oil or gas or their constituents are produced **or are capable of being produced on the premises in paying quantities, in the judgment of Lessee**, or as the premises shall be operated by Lessee in the search for oil or gas and as provided in Paragraph Seven (7) following.

Lease, 5/16/2008, at 1, ¶ 2 (emphasis added).

- 6 -

The Lease also contains the following clause stipulating termination unless a well is commenced within a set time or a specific amount for delay rental is paid:

3. This lease, however, shall become null and void and all rights of either party hereunder shall cease and terminate unless, within twelve (12) months from the date hereof, a well shall be commenced on the premises, or unless the Lessee shall thereafter pay a delay rental of: Ten and 00/100 Dollars ($10.00) per acre, each year, payments to be made annually until the commencement of a well. A well shall be deemed commenced when preparation for drilling have been commenced.

*Id*. at ¶ 3.

The Lease further contains a termination clause addressing the event of a dry well and its ramifications and a savings provision that contemplates a resumption of delay rental:

7. In the event a well drilled hereunder is a dry hole and is plugged according to law, this lease shall become null and void and all rights of either party hereunder shall cease and terminate, unless within twelve (12) months from the date of completion of the plugging of such well, the Lessee shall commence another well, or unless the Lessee after the termination of said twelve (12) month period resumes the payment of delay rental as herein above provided.

*Id*. at 2, ¶ 7.

Importantly, the Lease includes the following provision addressing the payment of an advance royalty under circumstances wherein the Lessee chooses to cease production from an active well, or chooses to "shut in" a well:

8. In the event a well drilled hereunder is a producing well and the Lessee is unable to market the production therefrom, or should

- 7 -

production cease from a producing well drilled on the premises, or should the Lessee desire to shut in producing wells, the Lessee agrees to pay the Lessor, commencing on the date one year from the completion of such producing well or the cessation of production, or the shutting in of producing wells, an advance royalty in the amount and under the terms herein above provided for delay rental until production is marketed and sold off the premises or such well is plugged and abandoned according to law. In the event no delay rentals are stated, the advance royalty payable hereunder shall be made on the basis of one dollar ($1.00) per acre per year.

*Id*. at ¶ 8. Here, a plain reading of this clause requires a payment of an "advance royalty," which the clause contemplates is in the amount provided in the Lease for delay rental. Unlike Paragraphs 3 and 7 of the Lease, this clause does not contain any direction that the Lease becomes null and void unless such payments are made. Indeed, this clause does not contemplate that a situation involving a well being shut in would affect the term of the Lease.

Here, there is no dispute that wells were commenced on the property and royalties paid therefrom in accordance with the Lease. Nevertheless, when transportation of the gas from the wells became disrupted and the Lessee chose to shut in the wells, a question arose concerning the viability of the wells producing marketable resources. The decision to shut in the wells triggered application of Paragraph 8 of the Lease and the concomitant requirement to pay advance royalties. The Fryes would have us read into Paragraph 8 certain provisions from Paragraphs 3 and 7 that implicate the Lease automatically becomes null and void when certain actions are not

undertaken to hasten the commencement of viable wells or delay rentals are paid under those clauses. However, upon scrutiny of Paragraph 8, we discern no ramification of termination of the Lease within its provisions. Therefore, under Paragraph 8, the shutting-in of a well by a Lessee has no bearing on the habendum clause in Paragraph 2. Consequently, as the trial court noted, "Penn View made significant efforts to get the well back into productive status, including obtaining rights of way from neighboring property owners and obtaining a $500,000.00 loan to finance a connecting pipeline." Trial Court Order, 7/7/23, at 5. We agree with the trial court's assessment that "[a]t a minimum, these action show that issues of fact exist as to whether Penn View acted in good faith in continuing to attempt to operate the well." *Id*. Such questions of fact directly reflect on the portion of the habendum clause that specifies the Lease continues "for a term of Five (5) year(s) and so much longer thereafter as oil or gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of Lessee." Lease, 5/16/2008, at 1, ¶ 2. Accordingly, the Fryes' argument that summary judgment was necessary because the Lease terminated for failure to pay advance royalties lacks merit and we conclude the trial court properly denied their motion for summary judgment.

The Fryes next argue the trial court erred in granting Penn View's motion for summary judgment based on the Fryes' lack of notice prior to the filing of their complaint. *See* Appellants' Brief at 31-40. They contend that notice was

not required because the Lease had been terminated and, alternatively, their letter to Penn View provided adequate notice. While we do not agree with the Fryes that the Lease had been terminated, for the subsequent reasons we concur that their letter provided adequate notice under the Lease.

The trial court made the following observations in reaching its conclusion that there is no question of material fact that the Fryes failed to provide notice pursuant to the Lease prior to the commencement of their action against Penn View:

> The terms of the lease by their plain language require thirty days to be provided to the lessee to cure any alleged breach prior to the commencement of suit. Even charitably construing the May 20, 2021 letter as a notice of alleged breach to Penn View, [the Fryes] did not provide thirty days to cure prior to filing suit on June 9, 2021. Further, a review of the language of the letter indicates that it is not a notice of alleged breach with opportunity to cure, but rather a statement that [the Fryes] believed that the lease was no longer in effect.

> Again, the plain language of the lease states that "service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause." Proper notice is clearly a condition precedent to the filing of *any* suit based on the lease. Because there is no question of material fact as to [the Fryes'] failure to provide notice and opportunity to cure to Penn View, [Penn View's] motion for summary judgment must be granted, dismissing the claims set forth in [the Fryes'] amended complaint. [The Fryes] are plaining in breach of the lease, and so judgment will be granted for Penn View on their sole counterclaim for breach of contract as well.

Order, 7/7/23, at 6-7 (emphasis in original). Upon careful review of the record before us, we are constrained to disagree with the trial court.

The pertinent clause of the Lease follows:

- 10 -

17. In the event Lessor considers that Lessee has not complied with any of its obligations hereunder either express or implied, Lessor shall notify Lessee in writing setting out specifically in what respects Lessee has breached this contract. Lessee shall then have 30 (thirty) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of 30 (thirty) days after service of such notice on Lessee. Neither the service of said notice nor the doing of any acts by Lessee aimed to meet all or any part of the alleged breaches shall be deemed an admission or presumption that Lessee has failed to perform all its obligations hereunder.

Lease, 5/16/2008, at 3, ¶ 17.

"It is settled law in this Commonwealth that the filing of an amended complaint has the effect of eliminating the prior complaint." **Avery v. Cercone**, 225 A.3d 873, 882 (Pa. Super. 2019) (citations omitted) (internal quotation marks and emphasis omitted). Therefore, all pleadings in a complaint preceding an amendment become "null and void for purposes of the Rules of Civil Procedure." **Id**. at 883. Mindful of this legal understanding, we review the procedural history from the certified record.

The Fryes sent a letter to Penn View dated May 20, 2021, indicating that the Lease had been terminated. Penn View responded to this communication by forwarding advance royalty payments to the Fryes, which included past due amounts. Nevertheless, the Fryes rejected the funds. On June 9, 2021, the Fryes filed a complaint seeking declaratory relief that the Lease had terminated and injunctive relief in the form of a bar on Penn View entering and operating the wells on their property. On July 14, 2021, Penn View filed

preliminary objections raising the Fryes' failure to provide notice and an opportunity to cure. The Fryes filed an amended complaint on July 21, 2021, which restated their claims for declaratory and injunctive relief and included an allegation that proper notice had been provided to Penn View on May 20, 2021.

As did the trial court, we will construe the Fryes' May 20, 2021 communication with Penn View as an appropriate notice under Paragraph 17 of the Lease. Consequently, under Paragraph 17, Penn View would have until June 19, 2021, to meet or commence to meet all or any part of the breaches, and the Fryes were not to bring an action until after that date. However, the Fryes filed a complaint before the expiration of the time allotted in Paragraph 17 of the Lease. Regardless, the timing of the Fryes' original complaint is of no moment because it became a nullity once their amended complaint was filed on July 21, 2021, which was beyond the period contemplated in the Lease. Accordingly, upon careful consideration of the law and procedural history of this case, we conclude the trial court improperly granted summary judgment in favor of Penn View on the basis of the Fryes allegedly breaching the Lease by failing to give notice under Paragraph 17.

In their final issue, the Fryes argue that the trial court erred in ordering summary judgment in favor of Penn View on its breach of lease counterclaim. *See* Appellants' Brief at 40-52. The Fryes contend that Penn View failed to establish the three elements of a breach of contract claim.

As we previously observe, to establish a breach of contract, a party must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McCausland*, 78 A.3d at 1101 (citation omitted). We have long explained that in order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss.

"The purpose of damages in a breach of contract case is to return the parties to the position they would have been in but for the breach." *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. 2003) (citation omitted). "To that end, the aggrieved party may recover all damages, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." *Ely v. Susquehanna Aquacultures, Inc*., 130 A.3d 6, 10 (Pa. Super. 2015) (citation and internal quotation marks omitted).

In its counterclaim, Penn View stated the following:

41. Through their actions in materially breaching [the Lease], the Fryes have caused Penn View to incur substantial damages.

42. Upon information and belief, if the Fryes had not materially breached [the Lease] and Penn View could have completed construction of the pipeline, Penn View would have been able to produce 1,200 mcf per day of natural gas beginning on or about June 20, 2021, which would have allowed Penn View to realize a payment of $2,400 per day for the natural gas from its purchaser and would not have required Penn View to make any further shut in royalty payments to other lessors in the Frye Unit.

43. Through June 19, 2021, Penn View has incurred damages totaling $678,479.50 and it continues to incur damages in the amount of $2,400.00 per day, beginning on June 20, 2021, plus an additional $8,761.51, per month, due to its inability to operate the wells and transport the natural gas from the Frye Unit to its purchaser.

Penn View's Answer, New Matter, and Counterclaim, 2/21/22, at ¶¶ 41-43.

In granting summary judgment, the trial court made the following cursory disposition, "[The Fryes] are plainly in breach of the lease, and so judgment will be granted for Penn View on their sole counterclaim for breach of contract as well." Order, 7/7/23, at 7. However, the trial court offered no analysis of the three elements of a breach. Of note is the lack of any review of resultant damages. Although Penn View has alleged damages, there are outstanding questions of fact concerning whether the damages were reasonably foreseeable and within the contemplation of the parties at the time they made the contract. Therefore, based on our careful consideration of the law and current record in this matter, we conclude that the trial court improperly granted summary judgment to Penn View on its counterclaim for breach of lease.

In summary, we affirm the denial of the Fryes' motion for summary judgment, reverse the order granting Penn View's motion for summary judgment, and vacate the entry of judgment in favor Penn View on its counterclaim. We remand this matter for further proceedings.

Order affirmed in part and reversed in part. Entry of judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/22/2024